# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**OAKLEY, INC.,**

           **Plaintiff,**

**-vs-**                                           **Case No. 6:06-cv-149-Orl-18JGG**

**SHAHAN FOODMAX INC. 102 d/b/a**
**SHAHAN FOOD MAX II,**
**SERAFINA BIBEAULT,**

           **Defendants.**

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

This cause came on for hearing on August 21, 2006 on the following motion:

> **MOTION:**    **MOTION FOR DEFAULT JUDGMENT AGAINST SHAHAN FOODMAX INC. 102 AND SERAFINA BIBEAULT (Doc. No. 14)**
>
> **FILED:**      **July 20, 2006**
>
> **THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

Plaintiff Oakley, Inc. ["Oakley"] seeks to hold Defendants Shahan Foodmax Inc. 102 d/b/a Shahan Food Max II ["Shahan Food Max"] and Serafina Bibeault liable for infringing on Oakley's trademarks by selling counterfeit sunglasses in violation of the Lanham Act, 15 U.S.C. § 1114. Plaintiff now moves for entry default judgment and permanent injunction against Defendants Shahan and Bibeault who have never appeared in this action.

**I.      THE LAW**

    **A.      Default Judgment**

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55 (a).  Rule 55 (b)(2) further provides:

> In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against an infant or incompetent person unless represented in the action by a general guardian, committee, conservator, or other such representative who has appeared therein. If the party against whom judgment by default is sought has appeared in the action, the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least 3 days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute of the United States.

The mere entry of a default by the Clerk does not in itself warrant the entry of a default judgment by the Court. Rather, the Court must find that there is a sufficient basis in the pleadings for the judgment to be entered. *Nishimatsu Constr. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). A default judgment cannot stand on a complaint that fails to state a claim. *Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1370 n.41 (11th Cir. 1997) (citing *Nishimatsu*, 515 F.2d at 1206). A default judgment has the effect of establishing as fact the plaintiff's well-pleaded allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (citing *Nishimatsu*, 515 F.2d at 1206).

### B. <u>The Lanham Act</u>

Oakley seeks judgment against Defendants for selling counterfeit sunglasses. Under 15 U.S.C. § 1114(1) of the Lanham Act, when a person "uses[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark" which is "likely to cause confusion, or to cause mistake, or to deceive," that person is liable for trademark infringement. 15 U.S.C. § 1114(1)(a).[1]

### C. <u>Statutory Damages</u>

Oakley seeks statutory damages in the amount of $40,000 pursuant to 15 U.S.C. § 1117(c), which provides statutory damages for the use of counterfeit marks.[2] Section 1117(c) provides that in a case involving the use of a counterfeit mark "in connection with the sale, offering for sale, or distribution of goods or services," the plaintiff may elect to recover statutory damages (instead of actual damages) in the amount of not less than $500 and no more than $100,000 "per counterfeit mark

---

[1] 15 U.S.C. § 1114(1) provides that:

> Any person who shall, without the consent of the registrant--
> (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive,
> shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

[2] Oakley is not requesting attorney's fees and costs. Docket No. 14-1 at 8.

. . . as the court considers just." 15 U.S.C. § 1117(c).[3] This provision was added to the Lanham Act because "counterfeit records are frequently nonexistent, inadequate, or deceptively kept . . . making proving actual damages in these cases extremely difficult." *Tiffany Inc. v. Luban*, 282 F. Supp. 2d 123, 124 (S.D.N.Y. 2003) (citing S.Rep. No. 177, 104th Cong. 1995). Some courts have found statutory damages "specially appropriate" in default judgment cases because of lack of discovery and disclosure. *See Petmed Express, Inc. v. Medpets.com, Inc.*, 336 F. Supp. 2d 1213, 1220 (S.D. Fla. 2004) (citing *Tiffany*, 282 F. Supp. 2d at 123, *Sara Lee Corp. v. Bags of N.Y., Inc.*, 36 F. Supp. 2d 161, 165 (S.D.N.Y. 1999), and *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494 (C.D. Cal. 2003)).

While the Lanham Act does not provide guidelines for courts to use in determining an appropriate award (other that what "the court considers just"), district courts use as guidance an analogous provision of the Copyright Act, 17 U.S.C. § 504(c), which also provides for statutory damages.[4] *See, e.g.*, *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004). In determining statutory damages under the Copyright Act, the court looks to factors such as:

---

[3] Section 1116(d)(1)(B) defines "counterfeit mark" as:

> (I) a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered; or
> (ii) a spurious designation that is identical with, or substantially indistinguishable from, a designation as to which the remedies of this chapter are made available by reason of section 220506 of Title 36; . . . .

15 U.S.C. 1116(d)(1)(B)(i)-(ii).

[4] Under the Copyright Act, the copyright owner may elect to recover, instead of actual damages and profits, an award of statutory damages "in a sum of not less than $750 or more than $30,000" for each infringement "as the court considers just." 17 U.S.C. § 504(c)(1).

1.) the expenses saved and the profits reaped; 2.) the revenue lost by the plaintiffs; 3.) the value of the copyright; 4.) the deterrent effect on others besides the defendant; 5.) whether the defendant's conduct was willful; 6.) whether the defendant has cooperated in providing records from which to assess the value of the infringing material produced; and 7.) the potential for discouraging the defendant. *Tiffany Inc.*, 282 F. Supp. 2d at 125 (citing *Fitzgerald Pub. Co., Inc. v. Baylor Pub. Co.*, 807 F.2d 1110, 1117 (2nd Cir. 1986)).[5]

### D.     Permanent Injunction

Oakley also seeks a Permanent Injunction pursuant to 15 U.S.C. § 1116, asking that this Court enjoin Defendants from further infringement on Oakley's trademarks.  Section 1116 states that courts may issue injunctions "according to principles of equity and upon such terms as the court may deem reasonable" to prevent further trademark violations.  15 U.S.C. § 1116(a).[6]

---

[5] While the United States Court of Appeals for the Eleventh Circuit has never outlined detailed factors to assess statutory damages (neither under the Copyright Act nor the Lanham Act), the Eleventh Circuit has stated that "[i]n its broad discretion for determining statutory damages [under the Copyright Act], the district court should consider both the willfulness of the defendant's conduct and the deterrent value of the sanction imposed." *Cable/Home Commc'n Corp. v. Network Prods., Inc.*, 902 F.2d 829, 852 (11th Cir. 1990).  As with statutory damages under the Lanham Act, statutory damages under the Copyright Act are generally awarded when "no actual damages are proven, or actual damages and profits are difficult or impossible to calculate." *Id.*, 902 F.2d at 850.

[6] Section 1116(a) further provides that

> [a]ny such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction. Any such injunction granted upon hearing, after notice to the defendant, by any district court of the United States, may be served on the parties against whom such injunction is granted anywhere in the United States where they may be found, and shall be operative and may be enforced by proceedings to punish for contempt, or otherwise, by the court by which such injunction was granted, or by any other United States district court in whose jurisdiction the defendant may be found.

*Id*.

A district court may grant permanent injunctive relief if the moving party shows that: 1.) it has a substantial likelihood of success on the merits; 2.) irreparable injury will be suffered unless the injunction issues; 3.) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4.) if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). The standard for a permanent injunction is the same as for a preliminary injunction except that the movant must show "actual success on the merits" instead of a "likelihood of success." *Id.* (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

In trademark infringement actions, injunctive relief is appropriate as: 1.) "there is not adequate remedy at law to redress infringement and [2.)] infringement <u>by its nature</u> causes irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (citing *Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)). Further, courts have generally recognized that in such cases, the public interest is "paramount." *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." *Id*. (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).

## II.   APPLICATION

### A.   Procedural History

Oakley manufactures sunglasses and other products bearing either the "Oakley" mark – which is the word "Oakley," Oakley's elliptical "O" mark (*see* Docket No. 14-4 at 2, ¶ 5), or a combination

of both marks [collectively "Oakley's Marks"]. Docket No. 1-1 at 3-4, ¶¶ 8, 11-12 (complaint).[7] All of these marks are registered with the United States Patent and Trademark Office pursuant to the Lanham Act, 15 U.S.C. § 1051. *See* Docket No. 14-6 at 2 (listing the date and registration numbers for Oakley's various marks). Oakley currently manufactures over ten lines of sunglasses and earned $560,590,000 in gross sales in 2003. Docket No. 1-1 at 3, ¶ 8. Oakley distributes its sunglasses and related products through approximately 13,500 selected accounts with optical stores, sunglasses retailers, and specialty sports stores. *Id.* at 3, ¶ 10.

Oakley filed its complaint seeking a permanent injunction and damages on February 8, 2006. Docket No. 1. Oakley alleges that Defendants' "distribution, sale, and offer for sale" of counterfeit sunglasses bearing Oakley's Marks violate the Lanham Act, 15 U.S.C. § 1114(1).[8] Id. at 6-7, ¶¶ 18, 21. According to Oakley, on June 30, 2004, an investigator for Oakley (hired by the law firm of counsel for Oakley) went to the Defendant Shahan Food Max, a convenience store, and bought a pair of counterfeit sunglasses bearing the Oakley Marks for $10.69. *See* Docket No. 14-4. Prior to filing suit, Oakley sent Defendants several letters, attempting to resolve this matter, and Defendants never responded. Docket 14-5 at 3, ¶ 8.

Defendant Serafina Bibeault was personally served with a summons and complaint at her residence on February 28, 2005. Docket No. 6. On the same day, the process server also served Bibeault as the President of Shahan Food Max at the Shahan Food Max address. Docket No. 7. On

---

[7]These trademarked properties are better described in paragraph 11 of the complaint and are collectively indexed on Exhibit "1" to Oakley's Complaint.

[8]In its complaint, Oakley seeks to hold Defendants liable for trademark infringment and unfair competition under the Lanham Act, as well as unfair competition under Florida common law. Docket No. 1-1. Oakley, in its motion for entry of final default judgment and permanent injunction, limits its claims to the claim of trademark infringement under the Lanham Act. Docket No. 14-1 at 2.

April 5, 2006, the process server left a copy of the summons and complaint at Bibeault's residence with Annabelle Buffington, Bibeault's roomate and co-worker. Docket No. 9. Also on April 5, 2006, the process server went to Shahan Food Max, and left a copy of the summons and complaint with Bakhie, a "manager." Docket No. 8. Oakley subsequently moved for entry of default, which the clerk entered on April 27, 2006. Docket Nos. 10, 11. Counsel for Oakley sent, by first-class mail, a copy of the motion for entry of default to Defendants. Docket No. 10-1 at 2-3.

On July 10, 2006, the Honorable G. Kendall Sharp ordered Oakley to show cause why it failed to seek default within the time required in Local Rule 1.07(b). Docket No. 12. Oakley responded that Defendants contacted Oakley and initiated settlement negotiations. Docket No. 13 at 1. The negotiations, however, "broke down." *Id.* Oakley filed the motion for default judgment now before the Court on July 20, 2006, the same day it filed its response to the show cause order. Docket No. 14. Upon referral from Judge Sharp, the undersigned ordered Defendants to appear in person at a hearing on the motion for default judgment on August 21, 2006. Docket No. 15 at 1. The Court also instructed Shahan Food Max to retain counsel, as corporations must be heard through counsel admitted to practice in this Court under Local Rule 2.02(d). *Id.* The Court further ordered the Clerk to serve, by U.S. mail, copies of the Notice of Hearing and Plaintiff's motion for default judgment Bibeault and Shahan Food Max. *Id.* at 2.

Defendants never appeared nor filed a memorandum in opposition to the motion now before the Court. On August 21, 2006, the undersigned held a hearing on Plaintiff's motion for default judgment. No one appeared on behalf Defendants. Counsel for Oakley was present. During the hearing, the undersigned received into evidence a photocopy of the on-line public inquiry results from the Florida Department of State, Division of Corporations. The document shows that Defendant

Shahan Food Max registered as a corporation with the Florida Department of State, Division of Corporations, and lists Bibeault as the Registered Agent and President of Shahan Food Max. *See* Docket No. 16 (Plaintiff's Exhibit No. 1). Oakley also submitted (as attachments to the motion now before the Court) photocopies of pictures of the sunglasses and declarations from the investigator who purchased the sunglasses and from Sandy F. Beattie, an Enforcement Specialist for Oakley. Docket Nos. 14-4, 14-5, 14-7. In her declaration, Beattie attests that she examined the sunglasses purchased from Shahan Food Max, and concluded that sunglasses are counterfeit based on differences between the purchased sunglasses and Oakley-manufactured sunglasses. Docket No. 14-5 at 1-2.

## B.  Analysis

After careful review of the complaint, motions, and declarations filed in this action, as well as the evidence submitted during the hearing, the undersigned finds that sufficient evidence supports Oakley's claim of trademark infringement and entry of default judgment and permanent injunction. In particular, the undersigned compared the photographs with the declarations, and noted that consistent with the statements in the declaration, the sunglasses bear marks nearly identical to Oakley's Marks on the front of the sunglasses and on the ear stem.[9] *Compare* Docket No. 14-4 at 2, ¶ 5 with Docket No. 13-7 at 1-3. Further, Defendants were properly served, and have had numerous opportunities to appear and contest the claims, as well as the motion now before the Court. Oakley's claims and motion, however, remain unopposed.

---

[9] Beattie, in the declaration, also states that the sunglasses fail to meet Oakley's standards for optical clarity, for "high mass and high impact protection"; that the ear stems are "made of inferior materials"; and fail to meet Oakley's standards for quality control as to fit and finish. Docket No. 14-5 at 4, ¶ 10.

Oakley seeks **$40,000** in statutory damages. Defendants' failure to appear in this action make it difficult to determine how much Defendants profit from the sale of counterfeit Oakley sunglasses and the scope of their infringing activity. Nonetheless, it is clear that Oakley spends millions of dollars each year in "marketing, product research[,] and development"; that Oakley's Marks are valuable; and that Oakley is adversely affected by the sale of counterfeit sunglasses. *See* Docket No. 14-5 at 2-3, ¶ 7. Further, Oakley and the public have a strong interest in deterring Defendants and third parties from selling and distributing counterfeit sunglasses. Oakley claims to have identified not less than 200 stores in Florida, aside from the Defendant Shahan Food Max store, that sell similar counterfeit sunglasses. Docket No. 14-1 at 6. An award of statutory damages will discourage Defendants and third parties from engaging in further infringing conduct.

The Court, however, finds that an award of **$20,000** in statutory damages is appropriate under 15 U.S.C. § 1117(c). Defendant Shahan Food Max is a convenience store that sold one pair of sunglasses for $10.69. This award is also consistent with the statutory damage award recommended in a similar case, *Oakley, Inc. v. Quick Stop, Inc.*, 6:05-cv-1641-18JGG, Docket No. 20.

Next, Oakley seeks a permanent injunction against Defendants. Defendants' default establishes Oakley's success on the merits and that Oakley's injury outweighs whatever damage the injunction may cause Defendants. As stated earlier, trademark infringement causes irreparable injury not only to Oakley, but also to the public. As the public has a strong interest in being free from the confusion and deception caused by trademark infringement, Oakley's proposed injunction is not adverse to the public interest.

Therefore, it is **RECOMMENDED**:

1. Oakley's Motion for Entry of Final Default Judgment and Permanent Injunction [Docket No. 14] should be **GRANTED** in part and **DENIED** in part;

2. the Court should award Oakley $20,000 as statutory damages and grant the Permanent Injunction (attached to this Report and Recommendation as Exhibit 1);

3. the Clerk should be directed to enter judgment and close the case; and

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on August 21, 2006.

_____
JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable G. Kendall Sharp
Counsel of Record
Unrepresented Party
Courtroom Deputy

Shahan Foodmax Inc. 102 d/b/a Shahan Food Max II
217 South Park Avenue
Sanford, FL   32771

Serafina Bibeault
1807 Landing Drive, Apt. F
Sanford, FL   32771